# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

UNITED STATES OF AMERICA     *     **CRIMINAL NO. 08-0266**

**VERSUS**     *     **JUDGE JAMES**

**JOEL THOMAS**    **- 01**     *     **MAGISTRATE JUDGE HAYES**
**JEREMIAH SLATE**    **-03**
**JIMMIE DAVIS**    **-04**

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are motions to suppress [doc. #s 93, 99, & 102] filed by defendants, Jimmie Davis, Jeremiah Slate, and Joel Thomas. For reasons stated below, it is recommended that the motions be **DENIED.**

## BACKGROUND

On, or about September 24, 2008, a federal grand jury returned a sealed indictment against Joel Thomas, Deonte Thomas, and Jeremiah Slate charging them *inter alia* with conspiracy to possess and distribute various quantities of methamphetamine from April until August 2008. (Indictment [doc. # 1]). In conjunction with the indictment, the court issued warrants for defendants' arrest. [doc. #s 8-10].

Despite the indictment, law enforcement agents continued their surveillance of defendants' operations, and on September 26 and October 9, 2008, succeeded in purchasing large quantities of Ecstacy pills from an alleged co-conspirator, Jimmie Davis. (Search Warrant Affidavit; Gov.'t Resp., Exh. [doc. # 95]). After the October 9, 2008, transaction, agents followed Jimmie Davis to 8876 Highway 80, Simsboro, Louisiana, a residence known to have

been used on many occasions by defendants during the past year.  *Id.*; Slate M/Suppress [doc. # 99-2, pg. 3].  That same afternoon, Jim Tuten, a deputy with the Lincoln Parish Sheriff's Office, presented an affidavit for a search warrant to the Honorable Cynthia J. Woodard, of the 3rd Judicial District Court for the Parish of Lincoln, State of Louisiana.  (Search Warrant Affidavit; Gov.'t Resp., Exh. [doc. # 95]).  At 1:50 p.m. on October 9, 2008, Judge Woodard signed a warrant authorizing agents to search the "premises" located at 8876 Highway 80, Lincoln Parish, Louisiana, and to seize certain property related to narcotics trafficking.  *Id.*  Later that same day, agents executed the search warrant at 8876 Highway 80 and recovered drugs from the residence and from a Silver Ford one-ton pickup parked there.  (Slate M/Suppress [doc. # 99-2, pg. 3]).

In light of the intervening drug transactions and evidence, a federal grand jury returned a superceding indictment on November 19, 2008, which revised the existing counts to join defendants, Jimmie Davis and Lemonde Zachery, and to add new counts against the various defendants.  (Superceding Indictment [doc. # 37]).  All five defendants have since made appearances and entered pleas of not guilty.

On February 11, 2009, defendant Jimmie Davis filed the instant motion to suppress all items seized from the residence located at 8876 Highway 80 in Lincoln Parish, Louisiana.  [doc. # 93].  On February 13, 2009, defendant Jeremiah Slate filed his own motion to suppress evidence seized from the residence located at 8876 Highway 80, including items seized from the Ford pickup truck parked on the premises.  [doc. # 99].  Finally, on February 17, 2009, defendant Joel Thomas filed a motion to suppress the evidence seized from the Highway 80 residence for the same reasons urged by his co-defendants.  [doc. # 102].  On February 11 and 18, 2009, the

government filed its oppositions to the motions to dismiss.[1]  The matter is now before the court.

## LAW AND ANALYSIS

### I.  Good Faith Exception

Defendants contend that the affidavit submitted to obtain the search warrant for the subject premises did not provide sufficient information, nexus, or probable cause to support the issuance of a search warrant.  Accordingly, they conclude that the search and seizure violated their rights guaranteed by the Fourth Amendment of United States Constitution and that all evidence seized pursuant thereto must be suppressed.[2]

A motion to suppress evidence discovered pursuant to a search warrant is analyzed under a two-step process.  *United States v. Sibley*, 448 F.3d 754, 757-758 (5th Cir. 2006) (citation omitted).  First, the court must decide whether the good-faith exception to the exclusionary rule applies.  *Id*.  "'The good-faith exception provides that where probable cause for a search warrant

---

[1]  In its latest opposition, the government contends that Joel Thomas and Jeremiah Slate lack standing to challenge the search because they did not reside at 8876 Highway 80.  However, the warrant also authorized the search of Slate's truck (because it was on the premises), thus he arguably enjoys standing to challenge the warrant on that basis.

In addition, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 473 (1998).  However, the court cannot discern from the instant record whether Thomas and Slate were merely day visitors or overnight guests.  Defendants are ordinarily entitled to present evidence as to standing.  *See, United States v. Boruff*, 909 F.2d 111, 116 (5th Cir. 1990).  Accordingly, for purposes of this motion, the court will assume standing.  *See*, discussion, *infra*.

[2]  "The question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a federal offense is whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution." *United States v. Cordero*, 465 F.3d 626, 630 (5th Cir. 2006).

Davis also contends that the search and seizure violated the Louisiana Constitution.  The exclusionary rule, however, discourages violations of the Fourth Amendment, not violations of state law.  *Cordero, supra*.

is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded.'" *Id.* (quoting *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir.2002)). "'If the good faith exception does apply, the motion to suppress should be denied.'" *United States v. Collins*, 2006 WL 3396504 (W.D. La. Oct. 6, 2006) (quoted source omitted).

However, the good-faith exception does not apply when: "(1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing magistrate abandoned the judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid." *Sibley, supra*. If the good-faith exception does not apply, the court must proceed to the second step of the analysis and ensure that the magistrate issuing the warrant had a substantial basis to conclude that there was probable cause to support the warrant. *Id*.

The government bears the burden of demonstrating that the good faith exception is applicable. *United States v. Gant*, 759 F.2d 484, 487-489 (5th Cir. 1985). Here, however, the government contends that a hearing in this matter is not necessary. Indeed, "[e]videntiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citation omitted). Because an affidavit submitted in support of a search warrant is presumptively valid . . . .

[t]o mandate an evidentiary hearing, the challenger's attack must be more than

conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978).

The instant defendants do not contend that the averments in the supporting affidavit were deliberately false or made with reckless disregard for the truth. Accordingly, an evidentiary hearing is not required. *See, United States v. Moore*, 1994 WL 612393 (5th Cir. Oct. 21, 1994) (unpubl.). When, as here, the principal issue is whether the supporting affidavit so lacked probable cause that no reasonable officer could believe in its existence, determination of good faith will typically depend upon an examination of the affidavit by the reviewing court. *United States v. Gant*, 759 F.2d 484, 487-489 (5th Cir. 1985).[3]

Two principles guide the court's assessment of whether the supporting affidavit "bore indicia of probable cause: [f]irst, it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time; second, the affidavit should be construed in a common sense and realistic manner, with conclusions based upon the 'laminated total of available facts." *Craig*, 861 F.2d at 821 (citations and internal quotation marks omitted).

The good faith inquiry "'is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the

---

[3] The court's first step is to examine the affidavit. *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

magistrate's authorization.'" *United States v. Maggitt*, 778 F.2d 1029, 1035 (5th Cir. 1985) (quoting *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 3421 n23 (1984)).  Stated another way, "if it is plainly evident that a magistrate or judge had no business issuing a warrant, then police cannot objectively rely on the warrant."  *Id.*  (quoted source and internal quotation marks omitted).  Moreover, the good faith exception asks "not whether the issuing judge made a proper determination of probable cause, but whether the agents reasonably relied on the judge's determination in light of the information set forth in the affidavit."  *United States v. Pigrum*, 922 F.2d 249, 252-253 (5th Cir. 1991) (citations omitted).  Officers may appropriately rely on the validity of a warrant when the "warrant application is supported by more than a 'bare bones affidavit' containing wholly conclusionary statements."  *Id.* (citations omitted).

To determine whether an affidavit has sufficient indicia of probable cause to search a house, the court must determine if the affidavit "'establish[ed] a nexus between the house to be searched and the evidence sought.'"  *United States v. Nguyen*, 172 Fed. Appx. 558 (5th Cir. 2006) (quoting *United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir.1996)), *cert. denied by Nguyen v. U.S.*, ____ U.S.____,127 S.Ct. 2961 (2007).  "The nexus may be established 'by direct observation or through normal inferences as to where the articles sought would be located.'"  *Id.*

The search warrant signed by Judge Woodard states that she reviewed the application affidavit and concluded that there was probable cause to believe that the described property could be found at the 8876 Highway 80 premises.  (Search Warrant; Gov.'t Resp., Exh. [doc. # 95]).  On October 9, 2008, Jim Tuten, a Lincoln Parish Sheriff's Deputy with over 20 years of law enforcement experience, signed and submitted the affidavit in support of the search warrant.  (Search Warrant, Affidavit; Gov.'t Resp., Exh. [doc. # 95]).  Tuten averred that the affidavit was

based upon his personal knowledge and facts provided by the DEA and the Louisiana State Police. *Id*.[4]

The affidavit recited that since November 2007, Tuten and other agency officers had been investigating suspected illicit drug distribution conducted by Deonte Thomas, Joel Thomas, and Jeremiah Slate. *Id*. at ¶ 3.[5] The affidavit detailed a controlled purchase by a confidential witness of 500 Ecstasy tablets from Joel Thomas, Deonte Thomas, and Jeremiah Slate on April 26, 2008. *Id*. at ¶¶ 8-9. Prior to the transaction, law enforcement officers observed the foregoing defendants departing from and returning to a residence at 1414 Kenwood Drive in Ruston, Louisiana. *Id*. Since April 26, 2008, law enforcement officers had observed vehicles driven by Thomas, Thomas, and Slate at the 1414 Kenwood residence on numerous occasions. *Id*. The foregoing defendants "used" the 1414 Kenwood Drive residence. *Id*. at ¶ 11.

On September 26, 2008, law enforcement agents purchased a large quantity of ecstasy pills from Jimmie Davis. *Id*. at ¶ 12. Agents were aware that Davis was "at this residence" on several different occasions, and was seen at "this residence" prior to the September 26, 2008, drug transaction. *Id*.[6]

---

[4] "An affidavit may rely on hearsay-information not within the personal knowledge of the affiant, . . . as long as the affidavit presents a substantial basis for crediting the hearsay." *United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993) (citations and internal quotation marks omitted). Where one officer has personally observed the evidence and then passed that information to the affiant there is substantial cause to credit the hearsay. *See, United States v. Melancon*, 462 F.2d 82, 91 (5th Cir. 1972) (citation omitted).

[5] Specifically, distribution of Ecstasy, Alprazolam, and Hydrocodone. *Id*.

[6] These allegations are contained in paragraph 12 of the affidavit, which does not identify the referenced "residence." *Id*. The paragraph likely references the residence mentioned in the immediately preceding paragraph which is 1414 Kenwood Drive. *Id*.

On October 9, 2008, agents again purchased a large quantity of pills from Davis. *Id*. at ¶ 13. Agents tracked a silver Oldsmobile Alero from 1414 Kenwood Drive to the transaction site, whereupon Davis alighted and sold a large quantity of ecstasy to an "RCI." *Id*. at ¶ 14.[7] After the transaction, the agents followed the Alero to a residence located at 8876 Highway 80, in Lincoln Parish, La. *Id*. at ¶ 15. Agents were aware that Davis, "Denote Thomas" [sic], and others had "used the residence many times, during the past year." *Id*. at ¶ 16. Tuten further averred that, based upon his training and experience, drug dealers or traffickers commonly secrete contraband, proceeds from drug sales, large amounts of currency, and associated records within their residences and/or businesses. *Id*. at ¶¶ 1-2.

To sum up, Tuten's affidavit contains specific assertions that Deonte Thomas, Joel Thomas, and Jeremiah Slate had sold illicit drugs after sallying forth, and returning to 1414 Kenwood Drive. Moreover, on two occasions, less than two weeks apart, agents purchased large quantities of illicit drugs from Jimmie Davis – the most recent transaction having occurred on the day the agents obtained the warrant. In fact, the affidavit asserts that law enforcement tracked a car from the 1414 Kenwood Drive residence, a residence that defendants had previously used in association with drug transactions, to the rendezvous point for a drug transaction, and then on to the residence at 8876 Highway 80, Lincoln Parish, – a residence where law enforcement officers had observed known purveyors of illicit drugs (Davis, Thomas, et al.) use "many times" during the past year. The foregoing assertions, in conjunction with affiant's experience that drug dealers commonly use their residences to conceal contraband and drug proceeds, furnished adequate

---

[7] This paragraph does not specify what date the agents tracked the vehicle. However, because the paragraph discusses a drug sale, it is logical to infer that it occurred on October 9, 2008, – the date referenced in the preceding paragraph.

"information to allow the conclusion that a fair probability existed that seizable evidence would be found" on the premises. *United States v. Cisneros*, 112 F.3d 1272 (5th Cir. 1997) (citation omitted).

The instant circumstances are not qualitatively different than those confronted by this court in *Collins, supra*, which, in turn, were analogous to the facts set forth in *Nguyen, supra*. In each case, the court determined that the good faith exception applied to the search warrants obtained for defendant's residence even though there was nothing that "specifically placed drugs or drug-related paraphernalia at the residences searched." *Collins, supra*. In so holding, the courts remarked that the affidavits demonstrated a nexus between the residences and the illicit activity because 1) they established that defendants were involved in illicit drug activity, 2) defendants had recently been to their residences, and 3) in the affiants' experience, drug dealers commonly maintained contraband and related items in their residences. *Collins, supra; Nguyen, supra*.

Here, the affidavit does not assert that the observed drug trafficker(s) reside at 8876 Highway 80 in Lincoln Parish.[8] However, it does assert that known drug dealers have "used this residence many times, during the past year." Moreover, the affidavit establishes a *direct* link between the residence and illicit drug activity when agents followed a participant in an illicit drug sale to the subject premises after the drug transaction. Rather than immediately storming the residence, the law enforcement agents practiced what courts have encouraged them to do: they went before an impartial magistrate and obtained a search warrant. *Gant, supra* (citations

---

[8] Although, at least one motion to suppress alleges that Davis resided at the 8876 Highway 80 residence.

omitted).  Indeed, a motivating consideration behind the good faith exception was to alleviate the need for law enforcement officers to second guess magistrate determinations and to otherwise discourage them from utilizing exigent circumstances to forego warrants all together.  *Id*.

In this case, the facts set forth in the search warrant affidavit were not so insufficient as to preclude a law enforcement officer's "objectively reasonable reliance" upon the judge's probable cause determination.  *Id*.  Accordingly, the good faith exception applies, and the second step of the suppression analysis is pretermitted.  *Nguyen, supra*.

## II.  Staleness

Staleness is determined on the facts of each case.  *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984).  The courts will not mechanically count the lapsed days or weeks between the facts set forth in the affidavit and the issuance of the warrant.  *Id*.  Probable cause depends upon averred facts which are closely related in time to the issuance of the warrant.  *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993).  Time becomes less significant, however, when the affidavit recites protracted or continuous activity.  *Id*.  In *United States v. Ruff*, the Fifth Circuit found that an almost two month interval between the last observation of a drug laboratory by an informant and the ensuing search warrant did not render the warrant stale.  *United States v. Ruff*, 984 F.2d 635 (5th Cir. 1993).  Likewise, an ongoing drug trafficking scheme that lasted until two weeks before the warrant was issued was held not to be stale.  *Webster, supra*.

In this case, defendants contend that the affidavit was stale because it alleged that Thomas and Davis had been to the 8876 Highway 80 residence "during the past year."  However, the affidavit actually states that Thomas and Davis used the residence "many times, during the past

year." Moreover, the affidavit avers that agents followed Davis to the residence after his participation in a drug sale **on the same day** that the agents obtained the warrant. Few, if any, ongoing drug trafficking schemes will provide a more recent nexus than the circumstances presented in the instant affidavit.

### III. Vehicle Search

Defendants also seek to suppress all evidence discovered from the vehicles located on the subject premises. However, the Fifth Circuit has repeatedly recognized that a warrant authorizing a search of "the premises" includes vehicles parked on the premises. *United States v. Singer*, 970 F.2d 1414, 1417-1418 (5th Cir. 1992); *United States v. Cole*, 628 F.2d 897 (5th Cir. 1980); *United States v. Freeman*, 685 F.2d 942, 955 (5th Cir. 1982). In this case, there was a valid warrant that authorized a search of the "premises" at 8876 Highway 80, Lincoln Parish. Accordingly, defendants' argument lacks merit.

For the above-stated reasons,

**IT IS RECOMMENDED** that the motions to suppress evidence [doc. #s 93, 99, & 102] filed by defendants, Jimmie Davis, Jeremiah Slate, and Joel Thomas, be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 19th day of February, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE